UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACQUELYN STEWART; Individually, and on behalf
Of All Others Similarly Situated Who Consent
To Their Inclusion in a Collective Action;

      Plaintiffs,

v.                                                                    Case No.:  3:15-cv-00921-MMH-JRK

ENHANCED RECOVERY COMPANY, LLC.,
A Foreign Limited Liability Corporation;

      Defendant.
_____/

### JOINT MOTION FOR APPROVAL OF SETTLEMENT
### AND REQUEST FOR DISMISSAL WITH PREJUDICE

COME NOW, Plaintiff, Jacquelyn Stewart, along with the six other former employees of Defendant who have filed their notice of consent to participate in the instant matter (collectively, "Plaintiffs")[1] and Defendant Enhanced Recovery Company, LLC ("Defendant"), by and through their respective attorneys, hereby jointly move for this Court's review and approval of the settlement agreements between the Plaintiffs and Defendant (collectively, the "Parties") in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), and for entry of an order approving the settlement agreements attached hereto as Exhibit 2 and dismissing the case with prejudice.  In support, the Parties state as follows:

### BACKGROUND

1.    The Plaintiffs are 7 collections representatives (a.k.a. "Collectors").

---

[1] The Opt-In Plaintiffs are Infinity Thompson (Dkt. No. 8), Deitre D. Jackson (Dkt. No. 9), Sharnell Crews (Dkt. No. 13), Latara Griffin (Dkt. No. 14), Ruth Naomi Woolridge (Dkt. No. 17), and Malorie Perdue (Dkt. No. 18).

2. Defendant ERC is a business engaged in providing debt collections services to its clients.

3. On or about July 27, 2015, the Plaintiffs brought this action pursuant to the Fair Labor Standards Act ("FLSA") claiming the Defendant violated the FLSA by (i) failing to accurately track and compensate Collection employees for all of their overtime hours; (ii) requiring or encouraging employees to work off the clock; (iii) paying only "straight time" or the employees' regular hourly rate of pay for overtime hours, and (iv) failing to include non-discretionary incentive awards such as commissions or bonuses in the calculation of the employees' overtime wages.  *See* Dkt. No. 1.

4. ERC has denied and continues to deny any and all liability or wrongdoing of any sort with regard to the Plaintiffs' allegations.  ERC maintains that it properly paid the Plaintiffs for all hours worked.  Nonetheless, ERC has concluded that further litigation of this matter would be protracted, distracting and expensive, and thus it is desirable that this matter be fully and finally settled in the manner and upon the terms set forth in the Settlement Agreements.

5. Plaintiffs believe that their claims have merit.  However, Plaintiffs recognize and acknowledge the expense and duration of continued litigation necessary to prosecute their claims against ERC through decision at summary judgment, trial and appeals (if any). Plaintiffs have also taken into account the uncertain outcome and risk of any litigation, as well as the difficulties and delays inherent in all litigation.

6. Based upon Plaintiffs' investigation and evaluation, each of the Plaintiffs has determined that the settlement set forth in the Settlement Agreements is in their best interests.

7. On July 28, 2015 this Court issued its Track Notice and FLSA Scheduling Order wherein the Parties were directed to exchange responses to the Court's interrogatories and verified summary of Plaintiff's hours and payroll records.

8. On October 21, 2015, counsel for the Parties participated in a joint settlement conference pursuant to this Court's FLSA Scheduling Order. The Parties exchanged limited discovery regarding time and payroll information for the Plaintiffs.

9. Having engaging in limited discovery in this matter, including answering court interrogatories and exchanging documents, representations and assertions, there remain many genuine material disputes as follows:

   a. Whether the Plaintiffs worked off-the-clock before or after their shifts;

   b. Whether Plaintiffs were required or allowed to work off-the-clock during their lunch periods;

   c. Whether Plaintiffs were required or allowed to work off-the-clock after their schedule and/or on weekends;

   d. Whether Defendant reduced or "shaved" Plaintiffs' recorded time;

   e. Whether or not Plaintiffs' overtime hours were properly calculated (i.e., the value of the non-discretionary bonuses were included in the overtime rate calculation);

   f. Whether the applicable statute of limitations is two or three years;

   g. Whether Defendant acted in objective and subjective good faith such that payment of liquidated damages applicable;

   h. Whether any of the off-the-clock work is compensable under the Portal-to-Portal Act;

   i. Whether Plaintiffs were compensated for all compensable hours worked, and

3

j. Whether Plaintiffs worked in excess of forty (40) hours and if so, whether Plaintiffs received proper overtime compensation.

10. On October 21, 2015, the Parties reached a settlement in principal and the terms of the settlement was reduced to writing. The named Plaintiff and the six Opt-In Plaintiffs have each executed an individual settlement agreement. While the language and non-monetary terms of each of the seven settlement agreements are identical, the monetary payments are individualized for each Plaintiff. Each of the seven Settlement Agreements is attached hereto as Exhibit 2.

11. Pursuant to the terms of the Settlement Agreements, Defendant, ERC has agreed to pay Plaintiffs the aggregate sum of Seven Thousand Five Hundred Dollars ($7,500.00). The individual payment amounts are listed on Exhibit 1.

12. Pursuant to the terms of the Settlement Agreements, the Parties separately negotiated and agreed for ERC to pay Plaintiffs' attorneys' fees and costs, totaling $9,000.000.

13. The Parties Stipulate that the Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount paid to Plaintiffs.

14. For purposes of settlement, the Parties stipulate that the quantum of attorneys' fees and costs is fair and reasonable pursuant to *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

15. In the Settlement Agreements, the attorneys' fees and costs were allocated proportionately among all of the Plaintiffs. The individual attorneys' fee allocation amounts are listed on Exhibit 1.

16. The Parties have executed seven individual Settlement Agreements consenting to and agreeing to both the individual payment amounts and the allocation of the attorneys' fees and costs as fair and reasonable. *See* Exhibit 2.

WHEREFORE, the Parties respectfully request that the Court enter an order approving the Settlement Agreements and dismiss the case with prejudice.

## MEMORANDUM OF LAW

I. **The Court Should Approve the Parties' Settlement Because It Represents a Fair and Reasonable Compromise of Disputed Claims**

    A. **The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.***

As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the settlement, this Court will find that the Agreements are fair and should be approved. Specifically, the Agreements resolve a *bona fide* dispute between the parties

5

with respect to whether the Plaintiffs are entitled to repayment of overtime compensation for work allegedly performed off-the-clock. Furthermore, the Plaintiffs were represented by experienced counsel, who in the "adversarial context of a lawsuit," negotiated for the Plaintiffs a "reasonable compromise of disputed issues." *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food*, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354. In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

  A.  the existence of fraud or collusion behind the settlement;

  B.  the complexity, expense, and likely duration of the litigation;

6

      C.      the stage of the proceedings and the amount of discovery completed;

      D.      the probability of plaintiff's success on the merits;

      E.      the range of possible recovery, and

      F.      the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Dees v. Hydradry, Inc.*, 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enters., Inc., et al.,* 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3*; see also Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th Cir. 1977).

      **B.**      **The Settlement Was The Result of Arm's Length Negotiations Free From Collusion**

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, at *11-12 (M.D. Fla. Dec. 21, 2006). Here, each party is independently represented by counsel. Plaintiffs are represented by Mitchell L. Feldman of Feldman Law Group PA; Defendant, ERC is represented by Patricia J. Hill and Yash B. Dave of Smith Gambrell & Russell, LLP. All counsel involved have extensive experience in litigating claims under the Fair Labor Standards Act, including claims for overtime compensation and working off-the-clock. All counsel are obligated to and did vigorously represent their clients' rights.

7

Here the settlement was negotiated at arm's-length by experienced counsel and the parties and free from fraud or collusion. The Parties were able to settle this action only after they engaged in a comprehensive vetting and mediation of the wage practices at issue in this matter, and analysis of records exchanged by the parties. *Diaz v. Hillsborough Cnty. Hos. Auth.*, 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). Therefore, the Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' counsel believes that on inspection this Court will conclude that the proposed Settlement is fair, reasonable and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to coverage [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods,* 679 F.2d at 1353-54.

A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995), citing *Cotton,* 559 F.2d at 1330. The proposed settlement represents such a compromise. While Plaintiffs contend that the allegations asserted in this matter have merit and are supported by the evidence developed to date, this contention is disputed. Under such circumstances, Plaintiffs' counsel considers the Settlement Agreements to substantially benefit the Plaintiffs, especially when weighed against the uncertain outcome and risk of any litigation,

and the expense and delay which would result from prosecuting this action against ERC through trial and appeal. Its terms represent a successful resolution, given the fact that in litigation a trier of fact might conclude that ERC did not violate the FLSA or that Plaintiffs are entitled to substantially less damages than agreed to in the Settlement Agreements. Despite ERC's potential defenses based upon the compliance with the FLSA and its opposition to the hours claimed by Plaintiffs, the Settlement Agreements provide significant damages throughout the entire three-year period. Absent settlement, the presumptive two-year statute of limitations under the FLSA would likely apply and would be tolled only upon the filing of a consent to join form.

The settlement terms have been agreed to and accepted by the named Plaintiff and Opt-In Plaintiffs. Moreover, each Plaintiff was given the opportunity to reject the settlement, but voluntarily agreed to accept the terms and sign an individual settlement agreement. Each Opt-In Plaintiff had direct communications with their attorney and was made aware that they had an individual choice on whether to accept the wages offered, and each voluntarily agreed to resolve and accept the terms.

### C. The Complexity, Expense and Duration of Litigation

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed on July 27, 2015. During the pendency of the case, the Parties engaged in informal and formal discovery, including exchanging personnel, payroll, time records and compensation documents. Plaintiffs' counsel conducted extensive interviews of Plaintiffs and other witnesses. Ultimately, six Opt-In Plaintiffs joined this case. This putative collective action was resolved only after extensive research and analysis and arms-length negotiations.

Further, if the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery and litigation in order to prove their claims and defenses regarding

whether Plaintiffs were required and/or permitted to work off-the-clock without overtime compensation and whether Defendant properly calculated overtime wages.  To prove their claims or defenses, the Parties would incur extensive costs involving the review, calculation and computation of thousands of individual time records, computer log records and telephone records.  This settlement, therefore, is a reasonable means for both Parties to minimize future risks and litigation costs.

      **D.**      **The Stage Of Proceedings At Which The Settlement Was Achieved.**

The Parties reached settlement after more than nearly three months of investigation and discovery in the course of litigation. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in detailed evaluation of ERC's compensation practices for Plaintiffs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter.  The Parties exchanged records, information, data and representations regarding the claims and defenses in this matter.  In agreeing upon the proposed settlement, the Parties had sufficient information and had conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

      **E.**      **The Likelihood of Success at Trial.**

Defendant is engaged in the business of providing debt collections services for business to business clients. Plaintiffs were employed as Collectors during the relevant period of 2012 through 2015. The core bona fide FLSA disputes in this case relates to whether Plaintiffs were required and/or permitted to work off-the-clock without proper and adequate overtime compensation;

whether any or to what extent any overtime pay is due; whether liquidated damages are appropriate; whether a two or three-year statute of limitations would be applicable.

The plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have had to establish that they in fact worked off-the-clock without adequate overtime compensation. At trial, ERC would have claimed (i) ERC has an express policy forbidding Collectors from working off-the-clock; (ii) ERC has an express policy forbidding managers from shaving Collectors' time records; (iii) ERC implemented technological safeguards that prevent Collectors from working off-the-clock; (iv) ERC maintains a payroll policy of calculating overtime compensation in compliance with the FLSA; (v) any uncompensated work was *de minimis* and/or non-compensable pursuant to the Portal-to-Portal Act; and (vi) ERC enacted and enforced policies sufficient to show that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

If the case were tried, the jury would have been presented with a case where ERC would have argued that it maintained compliance with the FLSA, and Plaintiffs would bear the burden of proving that Collectors worked off-the-clock with ERC's knowledge and/or tacit permission of management.

Second, Plaintiffs would have had to establish the number of hours they worked off-the-clock. In the damage analysis conducted by Plaintiffs' counsel, that is the basis for the proposed settlement formula, each Plaintiff is credited with repayment of approximately one to three hour of overtime for each week in which they worked. This payment approximates the number of weekly hours each Plaintiff could possibly prove was performed with ERC's knowledge. If the

11

case were tried, ERC would have sought to establish that the number of hours worked per week was less than the approximated hours which could have substantially reduced or eliminated Plaintiffs damages.

Despite diligent investigation and research, it remains a close question of fact as to whether each Plaintiff worked off-the-clock, whether each Plaintiff was eligible for overtime compensation during any given week, to what extent each Plaintiff was entitled to overtime compensation, whether or not a two or three-year statute of limitations is applicable and whether or not liquidated damages are appropriate in this matter. In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise the bona fide dispute.

The possible range of recovery in this case, therefore, was $0 (if it is determined that Plaintiffs did not work off-the-clock and/or that the Portal-to-Portal Act applies to the unaccounted time), to approximately $40,000.00 (or 5 hours of overtime for every workweek during the past three years)[2] should the off-the-clock time be deemed to be compensable.[3] Ultimately, the Parties agreed to an amount of $7,500.00 representing an approximate payment of one to three hours of overtime compensation per week for each week Plaintiffs worked for Defendant.

### F. Plaintiffs' Counsel Should Be Awarded Attorneys' Fees and Costs In the Amount Agreed Pursuant to the Settlement Agreements.

---

[2] This number is based on: (a) Plaintiffs' recollection and estimation of hours worked off-the-clock; (b) an analysis of the time keeping records and (c) the Plaintiffs' wages. This estimation is based upon records and evidence not available to Plaintiff when Plaintiff submitted her answers to this Court's interrogatories.  Additionally, after exchanging discovery, Plaintiffs' counsel discovered that many Plaintiffs were employed by Defendant for a significantly shorter time period than Plaintiffs originally estimated.

[3] Based upon a review of the time records, it is undisputed that a substantial portion of the weeks each Plaintiff worked were weeks in which they were ineligible for overtime compensation based upon the number of hours worked, vacation time, sick days and holidays.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreements provides for the Defendant to pay Plaintiffs' Counsel their attorneys' fees and costs as part of the resolution of Plaintiffs' claims in the amount of $9,000.00. The Parties Stipulate that the Plaintiffs' attorneys' fees and costs to be paid by the Defendant were separately negotiated from the sums agreed to be paid for the wage claims of each Plaintiff. Moreover, the Plaintiff's attorney incurred substantially higher sums in fees, and through negotiations with Defendant, the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendant without regard to the amount paid to Plaintiffs. The Parties stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Over the past three months of litigation and previous months of pre-litigation work, Plaintiffs' counsel spent a significant amount of time in the case preparing this case, the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable issues, engaging in formal and informal discovery, and engaging in settlement-related discussions with Defendant's counsel that ultimately resulted in this settlement.

Plaintiffs' counsel also incurred over $1000.00 in costs and expenses associated with this litigation.  During settlement negotiations, the Parties separately negotiated attorneys' fees and costs without regard to the amount owed to Plaintiffs.  Ultimately, the Parties agreed to the payment of $9,000.00 in attorneys' fees and costs.  Tthe payment of attorneys' fees and costs of $9,000.00 is fair and reasonable under the circumstances and was a compromise from the fees incurred by Plaintiffs in this matter.  Further, the fact that Plaintiffs' counsel agreed to accept a reduced attorneys' fee demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Plaintiffs' counsel, Mitchell L. Feldman, customarily charges $350.00 per hour for labor and employment clients.  Mr. Feldman has been admitted to the Florida Bar since 1996 and is the owner of Feldman Law Group P.A. Mr. Feldman has practiced before all United States District Courts in the State of Florida, Florida Circuit Courts, the First District Court of Appeals, the Second District Court of Appeals, the Northern District of Georgia and the Eleventh Circuit.  Mr. Feldman has successfully conducted jury trials, bench trials and litigated a multitude of wage and hour cases (both singular plaintiffs and multi-plaintiff collective actions).  Mr. Feldman's extensive experience over the past eighteen (18) years militates in favor of a reasonable hourly rate of $350.00 per hour in these cases and has previously been awarded such rates and higher.

Further Plaintiffs' counsel's attorneys' fees and costs are reasonable in light of the fact that the total of $7,500.00 for wages in settlement of Plaintiffs' claims were obtained in spite of ERC's vigorous defenses and arguments that Plaintiffs' did not work off-the-clock, that Plaintiffs were electronically blocked from working off-the-clock and that to the extent that Plaintiffs did clock in before and after their schedule, and that such *de minimis* amounts of time are barred by the Portal to Portal Act.

This settlement was achieved by Plaintiffs' counsel's ability to persuade ERC that Plaintiffs' claims had merit.  This case settled after three months of litigation, including but not limited to, the exchange of informal and formal discovery and court-mandated FLSA settlement conference. It is appropriate that Plaintiffs' counsel be compensated for performing these services. ERC's counsel stipulates that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances, and Plaintiffs have also agreed to the amount of attorneys' fees and costs.

All of the above factors warrant that the $9,000.00 in attorneys' fees and costs are fair and reasonable under the circumstances.

## CONCLUSION

The Parties voluntarily agreed to the terms of their settlement.  All Parties were counseled and represented by their respective attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreements and dismiss this case with prejudice.

Dated:  December 11, 2015

                                                Respectfully submitted,

By:/s/ Mitchell L. Feldman
Mitchell L. Feldman, Esquire
Florida Bar No. 0080349
FELDMAN LAW GROUP PA
1715 N. Westshore Blvd., Suite #400
Tampa, Florida 33607
Telephone: (813) 639-9366
Facsimile:  (813) 639-9376
E-Mail:  mfeldman@ffmlawgroup.com

**Trial Counsel and Attorney for Plaintiffs**

By:/s/ Patricia J. Hill
Patricia J. Hill - Trial Counsel
Florida Bar No. 0091324
SMITH, GAMBRELL & RUSSELL, LLP
pjhill@sgrlaw.com
Yash B. Dave
Florida Bar No. 0068573
ydave@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida  32202
Telephone:  (904) 598-6100

Facsimile:  (904) 598-6240          **Attorneys for Defendant Enhanced**
                                    **Recovery Company, LLC**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of December 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to counsel of record for all parties.

>*/s/ Mitchell L. Feldman*
>Mitchell L. Feldman, Esquire
>Florida Bar No. 0080349